United States v. 73 DT Business Enterprises. Just give us one second. Mr. Jacobs, whenever you're ready. Thank you, Your Honor. Good morning and may it please the Court. Brian Jacobs, I represent the claimants here in this appeal. I didn't represent them below. The District Court in this civil forfeiture action abused its discretion by disentitling the claimants, 7D and 73 DT, from their legitimate claims to property without holding the government to its burden to show by a preponderance that they came within the scope of the Fugitive Disentitlement Statute or conducting a hearing to resolve any factual disputes. I apologize. Is the micing okay? I'm getting some feedback. It's whatever it is. It's my true fault and there's nothing to do about it. I'll continue. Thank you, Your Honor. This Court should reverse the District Court's order granting the government's motion to strike the claims or at a minimum vacate that order and remand so the District Court can conduct the necessary analysis and the necessary fact-finding. The District Court relied on four faulty and erroneous determinations and I'll start with the first of them, which is that the District Court relied on the supposed fugitivity of someone named Andre Durkacz. Now, under the Fugitive Disentitlement Statute 28 U.S.C. 2466B, claims over property by corporate claimants, such as the claimants here, may be disentitled only if the majority shareholder or an individual filing the claim on behalf of the corporation is a fugitive. Durkacz is neither of those things. One of the problems is, one of the many problems, I think, is you say a majority shareholder. Of course, there can only be one majority shareholder. All right. There is one majority shareholder. Can there be more than one majority shareholder? But by that, I mean, you know, if one has a majority, other people have minorities. Correct, Your Honor. I suppose there could be a claim filed jointly by two people who collectively form the majority. But, you know, certainly in this case, Durkacz is not a shareholder at all. Does it matter? Suppose we take Durkacz out of this case and say, you're right, he shouldn't be here at all. Does that change the result of the decision? Your Honor, in our briefing, we explained that the District Court's reliance on Durkacz's fugitivity infected the entirety of the analysis, and alone that error warrants sending it back to the District Court. But the District Court framed the opinion to say that in the alternative, Tarakova's fugitivity warrants disentitlement. And I'm happy to turn to that. Wait, and just to be clear, though, you're not, you haven't disputed Durkacz's fugitivity. Your dispute is more whether or not he is the majority shareholder, or is that not? The dispute is that under the plain language of the statute, Durkacz's fugitivity would only be relevant here if he were the majority shareholder or the individual filing the claim, and he's none of those things. The District Court... Right, but just to be clear, though, if we disagreed and we're, you're not, you haven't disputed his fugitivity, I guess, his status. I don't think that the District Court analyzed that, but I don't think we argue that Durkacz is not a fugitive in the briefing. The position is that Durkacz's fugitivity is totally irrelevant to the analysis because he's not the one filing a claim, and there is no precedent whatsoever that supports the idea that Durkacz's fugitivity here should warrant disentitlement of the claimants. The one District Court case the government relies upon, the Solberry case in the District Court in Washington, D.C., relied on the fact that an individual had an interest and was in the ownership structure and, in fact, was later shown to be a majority shareholder. That, that, there's no case that says someone who is not a majority shareholder, that disentitlement can be warranted based on that person's fugitivity of a corporate claimant such as here. So, turning to Tarakova, which occupied the rest of the District Court's analysis, the District Court made three erroneous determinations as to Tarakova. And I want to focus first on the most important of them, which is that the District Court found that Tarakova's, that the government had satisfied 2466B requirement, that the government showed by a preponderance that Tarakova was remaining outside the United States with the specific intent to avoid criminal prosecution. And the government's evidence showed nothing of the sort, certainly didn't show that by a preponderance. The government relied almost entirely on a single sentence or two in the affidavit from the agent, the Wolf affidavit, which is in Appendix 198 to 199, the relevant section. And in that sentence, the affidavit says that between 2013 and 2020, Derkoch and Tarakova traveled to the United States on numerous occasions. And on that slim basis, the District Court... And not after 2020. It's different for Tarakova and Derkoch. Tarakova's last travel here was in January of 2020. She got divorced from Derkoch in February 2020, and she was indicted in January 2023. Now, what the District Court says is that the travel behavior before and after the indictment was very different. But of course, the indictment comes three years after the travel behavior changes. And even before 2020, the agent's affidavit is simply insufficient to show by a preponderance any of the sort of regular travel that courts usually rely on. The agent just says she came here numerous times in that seven-year span, but doesn't say how many times or where or why. And of course, there are legitimate reasons why, starting in January 2020, she doesn't come here anymore. There is the outbreak of COVID. There's the outbreak of war. She gets divorced from Derkoch, and the daughter who she was coming to visit goes abroad. Can I just ask you, though, I mean, was there an assertion made below that those, in fact, were the reasons that she didn't come to the United States again, or those are sort of possible theories that you're suggesting? Your Honor, those arguments I'm offering to rebut the idea that the government has shown by a preponderance with this one line in the Wolf Affidavit, that Derkoch is deliberately avoiding coming to the United States with the specific intent to avoid prosecution. So the government says that was shown by a preponderance by this line in the Wolf Affidavit. I think it is a fair argument to rebut that by saying there are, not only is that insufficient under this Court's case law, I'm not aware of a single case that relies on such a generalized statement from an agent, but that also the Court can consider all the many legitimate reasons why she wasn't coming. I'm happy to go on to the two remaining. I see I have a little remaining time. The District Court also relied on the fact that the government had shown by a preponderance that Tarakova was not in custody elsewhere, and I just want to focus on that prong for a moment because in the Wolf Affidavit, he simply says, the agent simply says he's unaware of information that she's confined elsewhere. That really is insufficient to carry the government's burden by a preponderance. He doesn't say he looked, he doesn't say he checked law enforcement databases, he doesn't say he checked with law enforcement partners. He just says he's unaware of any basis. That is not proof by a preponderance. And under CAFRA, the Civil Asset Forfeiture Reform Act, that was meant to change the law in this regard, and it was meant to stop the government from relying on a showing of probable cause and a reliance on hearsay to take and seize assets without due process. Here, the government has offered really no more than probable cause and has relied pretty much on hearsay in order to seize these assets, and the District Court followed along. This Court should reverse, and I see I'm just out of time. I'm happy to answer any questions or to return on rebuttal. All right. We'll hear you on rebuttal. Thank you, Your Honor. And if you could just adjust before you start, Mr. O'Connor, the microphones or... I think the whole desk comes down. My experience is that only high school students doing moot court know how to operate the desk. Good morning. May it please the Court. My name is Madeline O'Connor, Assistant U.S. Attorney for the Eastern District of New York. It's a little hard for me, at least. The United States respectfully submits that this Court should affirm the District Court's decision ordering fugitive disentitlement based on the Court's findings that the requirements set forth in 28 U.S.C. 2466 have been met as to both Andrei Derkach and Oksana Tarakova and on the District Court's exercise of sound discretion. Claimants would have this Court take a narrow view of the evidence with regard to whether Tarakova has been deliberately avoiding the jurisdiction of the criminal court. In fact, ample evidence supports the District Court's findings that Tarakova has been avoiding the jurisdiction of the District Court. For instance, the District Court relied on evidence that for seven years prior to the sanctions, Derkach and Tarakova had come to the United States. They established bank accounts in the United States. They established corporate entities for the purpose of real estate investment. They resided partially in the condominiums that they ultimately purchased. Their family members lived here. Their daughter went to school here. But when the sanctions were looming, Derkach and Tarakova and their eldest daughter fled the United States, and shortly thereafter, their youngest daughter fled as well. This is- And they divorced apparently at that time too? Your Honor, the purported divorce decree was introduced through a declaration of claimant's counsel who allegedly located the purported decree through an internet search of Tarakova's name. Even though neither Tarakova's name nor Derkach's name is on the face of the document, and notably, Tarakova herself did not provide a declaration discussing the divorce or any other matter. An examination of the decree- So are we then to assume that they remain, for the purposes of this appeal, are we to assume that they remain married at that time? Yes, Your Honor. In fact, evidence submitted by claimants themselves support such a finding. Claimants submitted a letter from Manila sent to both Derkach and Tarakova, which attached the indictment and the complaint in this case and identified the steps that both of them needed to take to assert claims to the properties in this case, which suggests that the divorce in no way divested Derkach of an interest or that they're divorced. In addition, evidence of the Property Owners Association identified Derkach's parents as residents of the property, the condominiums, despite the fact that they claimed to have divorced in the months prior. Getting back to whether the evidence supports a finding that Tarakova has deliberately avoided the jurisdiction of the court, there's also evidence that Tarakova's counsel was silent when the criminal assistant asked Tarakova's counsel whether she'd be returning to the United States to submit to the jurisdiction of the criminal court. I'm sorry. I know you're discussing the deliberate avoidance, but I guess I just want to make sure you get to a point that I have a particular interest in, and that's this question of showing that she is not in custody. And I do find it a little troubling when the government has the burden to say, well, we don't have any evidence she's in custody. You have the burden to show she's not in custody. And so to just say, well, we don't have evidence that she is, not to say, well, we've looked or we've checked with these sources or that sources. How does that meet? How does the government meet its burden on that point? Your Honor, while it is true that the government, there is nothing in the record to show, the court's finding on that is consistent with this court's finding in Colossos, that where there was no evidence in the record that Ms. Colossos was ever confined, incarcerated, or otherwise unable to travel in the months prior to the district court ordering disentitlement, that was sufficient. And here, Dirk Hetch and Tarakova frequently traveled to the United States for a seven-year period prior to when they left the country. Right. And then they stopped. And so, as you know, you're saying that they had this pattern of being in the United States and then all of a sudden, or maybe not all of a sudden, but at some period, that stopped. And so how does that satisfy a burden of showing she's not in custody? What we know is she's not in the United States. And it almost seems as if the way this is being framed is that there's a presumption that, well, if we don't have a reason to think you're in custody, we're going to say you're not in custody. But to me, that doesn't sound like the government having the burden to prove that, meeting a burden to prove that. Your Honor, the Tarakova's whereabouts are unknown. So for the government to prove that she's not confined in an unknown location is a difficult burden. However, the evidence in the record does suggest that neither Dirk Hetch nor Tarakova is confined. For example, after they left the country, on the day that Dirk Hetch was sanctioned, he posted that day on Facebook criticisms of the sanctions. And that same day, their daughter moved out of the defendant and ran condominium, which suggests that Dirk Hetch was not confined at that time. And also it's worth noting that while claimants offer a number of reasons why Tarakova might not have been returning to the United States, she does not claim that one of the reasons is because she was confined in another jurisdiction. So we would submit that the District Court findings is consistent with Colossos under the circumstances. To speak once more about the deliberately avoiding the prosecution element or requirement, in addition to the fact of the prior conduct in the United States and the fact that Tarakova's counsel was silent when questioned whether she would return to the United States. It's also important to note the evidence that when Manila resigned on behalf to represent the entities, rather than come and represent the entities themselves, they hired at the very last minute, Saw gave a new nominee to come in and represent. And the District Court took that into consideration as well and found that the totality of the circumstances supported a finding that Tarakova was avoiding the jurisdiction. Can I ask, I should know this, but why are we, why is this happening in the Eastern District of New York when most things seem to be happening elsewhere? Your Honor, financial transactions transacted through the banks in the New York area. However, that does speak to the merits of the underlying merits of the forfeiture, and the courts have held that on a fugitive disentitlement motion, we don't reach the merits of the underlying forfeiture. Essentially, any issue raised by the claimants as to that is deemed waived by their remaining fugitives. So you kind of got there before the Southern District got there? Excuse me, Your Honor? You got to the case before the Southern District got to the case. Possibly, Your Honor. And can I just ask you, it came up a little bit during your adversary's argument, this issue of Dyrkach's status as a majority shareholder, or I guess their contention that he is not. What's your sort of view on the evidence to support that? Your Honor, claimants raised an argument below that Dyrkach does not have a current interest in their properties. They did not dispute the prerequisites for a fugitive disentitlement under 2466. On reply, claimants argued that subsection B should not be applied to Dyrkach because he's not a majority shareholder. However, the purpose of subsection B is to prevent fugitives from circumventing subsection A by using a company he controls to assert a claim that he would not be able to assert in his own capacity. And that's what happened here. The District Court in Solberry, U.S. versus $6,976,934.65 plus interest, analyzed the language of subsection B and found that it permits by a veil-piercing or alter ego inquiry to the fugitive disentitlement to be applied to a claim that's asserted by somebody who controls the company. In that case, the court analyzed the language of subsection B and found that the language, any majority shareholder is ambiguous because there can be, in fact, only one majority shareholder. So the court was decided it was appropriate to look at the underlying legislative history and congressional intent. The court quoted from the House report that addressed the addition of subsection B as part of the 2001 Patriot Act, which said, currently 28 U.S.C. section 2466 permits a court to disallow the claim filed in a forfeiture proceeding by a person who is a fugitive in a related criminal case. The amendment clarifies that a natural person who is a fugitive may not circumvent this provision by filing or having another person file a claim on behalf of a corporation that the fugitive controls. The court also quoted from the- And can I just, you're getting low on time. So just specifically, so what is the evidence in support of Derkache's control here, or which I'm assuming is what you're saying is required, putting aside the majority shareholder aspect? Yes, the companies were established through a multi-tiered structure. In fact, they were named after the initials of Derkache and Tarakova, D and T. Manela's counsel, the claimant's own evidence of the letter sent from Manela's counsel to Derkache and Tarakova discussing the ways that they should both assert claims to the property, evidences his interest. And in fact, claimants have in their papers assert that while Derkache may have had an interest in the properties, the government hasn't shown that he has a current interest. But we would submit that in this case, claimant Derkache had an interest and he was never divested of such interest. The evidence, the totality of the evidence shows that he had an interest, was involved in the establishment, he was involved in the financial statements. Manela, who is an agent of 70 and 73 DT, had made, told, said that he was involved and had veto power. So the evidence demonstrates his control and there's nothing to indicate that he ever ceased having such control. All right. I think unless we have further questions, I think we understand your position. Thank you. Thank you, Your Honor. I'd like to just briefly respond to a few points my adversary made. First, with respect to the question of whether the government has shown by preponderance that Tarakova is not in custody, government's relying on Colossos. A couple points on that. The issue of confinement elsewhere in Colossos was not really in dispute when you look at the portion of that opinion. I would argue that that's dicta, the line about confinement elsewhere. The case that is binding is this court's decision from a decade later in Technodyne that makes clear it's the government's burden to meet each of these elements by a preponderance. And here, the one line in the Wolf Affidavit at A198, I am unaware of any facts to suggest that Tarakova or Dercotch are confined or otherwise held in custody in another jurisdiction, is flatly insufficient to carry that burden. And my adversary offered no evidence beyond that that would meet that element. Your client didn't rebut it in any way. I suppose it's not there. It's a burden to do it, but they didn't, did they? It's not my client's burden to rebut the government's showing. The government has to show by a preponderance. The government can't simply say, we don't know. And then if the defense does not rebut it, it's deemed satisfied. That's exactly what Technodyne rejected. It really wasn't an issue in Technodyne, was it? Because in Technodyne, the defendants said that they weren't returning to the United States because they couldn't find jobs here. Correct, Your Honor. Although the standard of proof was an issue in Technodyne and the standard in the government's burden was an issue in Technodyne. And that burden applies to all of the elements here as it was articulated there. Second, the government, looking at Dercotch's fugitivity and the issue of majority shareholder, the government says, well, we can ignore that language essentially and look at the purpose of the statute and look at the legislative history. But Congress was fully capable of saying, anyone with an interest, they don't. They say a majority shareholder. There was no evidence that Dercotch has a current ownership interest that the government put forth. Certainly not evidence that meets the standard by a preponderance. And the district court doesn't articulate any. The district court, in its opinion, essentially buys into the government's view that Dercotch's generalized interest of whatever nature is sufficient under the statute. It's not the plain language of the statute should control. Third, the government said that there's ample evidence of Terracova deliberate avoidance. Many of the things the government referenced, like opening bank accounts and buying real estate, they were not Terracova's action. They're talking about Dercotch's actions and aspects of the Wolf Affidavit that refer to both. And then, just last before I wrap up, I think that the reason this is in the Eastern District reflects an overaggressive approach to these issues by that office where they seize property, file a contemporary indictment, know that the defendants won't come and risk, you know, years in jail, being denied bail just to fight the indictment, knowing that they can forfeit the property and not have to buttress their charges. I think that's inconsistent with CAFRA and this court should reverse. Absent any questions, I'll rest on our papers. Thank you, Judge. All right. Thank you, Mr. Jacobs. Thanks, Ms. O'Connor. We'll take the case under advisement.